# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Hot Springs Division

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JAN 21 2016

DOUGLAS F. YOUNG, Clerk
By _____
Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of an ) | |
| iPhone 6, with S/N F2LNFEE7G5QH and ) | |
| IMEI 354388060408805; an iPhone, S/N ) | Case No. 6:16 CM 1 |
| unknown, IMEI unknown;   and a HTC ) | |
| Desire 626 smartphone, S/N FA5B7B008481 ) | |
| and IMEI 352679075011663 ) | |

## APPLICATION FOR A SEARCH WARRANT

I, DEA Special Agent Jonathan Vannatta, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Eastern District of Arkansas *(identify the person or describe property to be searched and give its location)*:

(1)    iPhone 6, with S/N F2LNFEE7G5QH and IMEI 354388060408805;
(2)    an iPhone, S/N  unknown, IMEI unknown;
(3)    and a HTC Desire 626 smartphone, S/N FA5B7B008481 and IMEI 352679075011663
   located in the Drug Enforcement Administration Little Rock, Arkansas District Office.

The person or property to be searched, described above, is believed to conceal stored electronic records tending to establish and document possession and/or distribution of controlled substances, conspiracy to distribute controlled substances or use of the phones in furtherance of a drug trafficking offense including but not limited to: outgoing telephone/pager numbers, numeric/alphanumeric messages sent and received, verbal messages sent and received, address and telephone/pager number listings, electronically composed memorandum, time and or data markings to include calendar format organization of all such data,  phone listings to include names, aliases, telephone/pager numbers, codes, types of phone numbers and addresses, and photos and videos, which records constitute evidence of the commission of offenses in violation of 21 USC §§ 841(a)(1), 843(b), and 846 as evidenced by the attached affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

  X   evidence of a crime;

  ___ contraband, fruits of crime, or other items illegally possessed;

  X   property designed for use, intended for use, or used in committing a crime;

  ___ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, and the application is based on the facts contained in the affidavit of SA Jonathan Vannatta attached hereto.

  _X_   Continued on the attached sheet.

  ___   Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Jonathan Vannatta, Drug Enforcement Administation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 21, 2016

_____
*Judge's signature*

City and state: Hot Springs, AR

Hon. Barry A. Bryant, Chief U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jonathan Vannatta, being duly sworn do hereby depose and swear as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since February 2000. Prior to my employment with DEA, I was a captain in the United States Army serving for six years and continue to serve as a lieutenant colonel in the United States Army Reserve. As a DEA Basic Agent Trainee, I completed a sixteen (16) week resident training program that places strong emphasis on leadership, ethics, and human dignity. Academic instruction provides the basics in report writing, law, automatic information systems, and drug recognition, as well as leadership and ethics. Included in the instruction is a 100 hour physical fitness and defensive tactics regime designed to prepare agents to prevail in compliant and non-compliant arrest scenarios. I received 120 hours of firearms training including basic marksmanship, weapons safety, tactical shooting, and deadly force decision training. I received training in surveillance, undercover operations, prisoner processing, operational planning, report writing, and the use of technical equipment. I completed additional training as part of a professional development program. This includes training in money laundering, conspiracy and complex investigations, internet communications exploitation, telecommunications exploitation, indoor marijuana cultivation investigations, basic clandestine laboratory certification school, clandestine laboratory site safety officer training, financial investigation techniques, tactical paramedic training, firearms instructor, advanced agent training, and evidence custodian training.

2. This affidavit is made in support of an application for a search warrant pursuant to Federal Rules of Criminal Procedure, Rule 41 (b)(5) for the following:

    a. iPhone 6, S/N F2LNFEE7G5QH, IMEI 354388060408805, described as white in color with a gold colored Michael Kors Pave Smartphone Case, hereinafter referred to

1

as "**Subject Phone 1**";

        b.    iPhone, S/N unknown, IMEI unknown, described as white in color with a black Otterbox case, hereinafter referred to as "**Subject Phone 2**";

        c.    HTC Desire 626 smartphone, IMEI 352679075011663, S/N FA5B7B008481, described as white in color with a black hard plastic case, hereinafter referred to as "**Subject Phone 3**."

Because this Affidavit is for the limited purpose of establishing probable cause to support the issuance of a search warrant for **Subject Phones 1, 2, and 3**, it contains only a summary of the relevant facts. I have not included each and every fact known to me concerning this investigation.

    3.    Based on my training and experience conducting drug trafficking investigations, I am aware traffickers of illegal narcotics frequently utilize cellular telephones to facilitate the purchase, transportation, and/or distribution of illegal narcotics. Specifically, I am aware drug traffickers utilize multiple cellular telephones to communicate with co-conspirators during the transport of illegal narcotics to avoid detection and to differentiate between types of transactions, end-users and sources of supply. Furthermore, cellular telephones frequently contain names, text messages, voice mail messages, photographs, videos, and contact numbers for/of others involved in the distribution of illegal narcotics.

    1.    Based on my training and experience, I use the following technical terms to convey the following meanings:

        a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of

2

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video,

3

or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

2. Based on my training, experience, and research, I know that smartphones, such as iPhones, serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

3. The applied-for warrant would authorize the forensic examination of the three devices identified above for the purpose of identifying electronically stored data particularly described in Attachment A.

**PROBABLE CAUSE**

4. On January 11, 2016, Arkansas State Police (ASP) Corporal Keith Ponder was sitting stationary at a cross-over on I-30 observing east bound traffic. At approximately 12:40 a.m., Cpl. Ponder observed a blue Honda Pilot bearing Texas license plate FMJ 1671 traveling in the right traffic lane, east on I-30, driving on the fog line. Cpl. Ponder pulled out onto I-30 east, caught up to the vehicle, and followed the vehicle. Cpl. Ponder observed the vehicle cross the

fog line again, a violation of Arkansas State Code 27-51-302, Improper Lane Usage, and initiated a traffic stop. The vehicle stopped in the vicinity of mile marker 78. This location is in Clark County, Arkansas which is in the Western District of Arkansas. Cpl. Ponder approached the vehicle on the passenger side and requested the passenger roll down the window. Once the window was down, Cpl. Ponder detected the odor of marijuana emanating from the open vehicle window. The driver of the vehicle provided a Mexico driver's license with the name Eliazar ARCE-Macedo. The passenger provided a Texas driver's license with the name Brenda Yvette MATA with an address in Conroe, Texas. MATA explained to Cpl. Ponder ARCE-Macedo was her boyfriend and did not speak English well. She indicated they were traveling from Conroe, Texas to visit ARCE-Macedo's sister in Kentucky. Cpl. Ponder informed MATA he detected the odor of marijuana emanating from the vehicle. MATA attributed the odor to an individual smoking marijuana who cleaned the car earlier in the day. Cpl. Ponder requested ARCE-Macedo and MATA exit the vehicle and conducted a pat-down search of ARCE-Macedo and MATA for officer safety. Cpl. Ponder initiated a probable cause search of the vehicle. ASP Cpl. Rocky Rapert arrived to provide assistance. Cpl. Ponder observed mismatched screws on the driver's side tail light, a white dust trail leading to the roof, and all the screws holding the headliner had heavy tool marks. Several of the screws were loose. Cpl. Ponder observed a large amount of spray foam, not consistent with factory insulation, between the headliner and the roof. Cpl. Rapert examined the roof and detected the odor of fresh body filer, also known as Bondo. Cpl. Ponder observed body filler under the plastic panels running along the edge of the roof that hold the headliner. Cpl. Ponder placed his head into the space and detected a man-made void, i.e. a false/hidden compartment or trap, in the roof. Cpl. Ponder and Cpl. Rapert utilized a fiber optic scope to examine the false compartment. They observed multiple bundles wrapped in cellophane

concealed in the false compartment. Cpl. Ponder and Cpl. Rapert arrested ARCE-Macedo and MATA for trafficking a controlled substance. Trooper Nietert drove the vehicle to a local wrecker service to remove the bundles from the false compartment. Cpl. Ponder transported ARCE-Macedo and Cpl. Rapert transported MATA to the wrecker service. Both troopers searched the prisoner transport area of their vehicles before transporting the prisoners. The false compartment was accessed at the wrecker service to remove the bundles. Troopers discovered two access points to the false compartment, one on each side of the roof. Troopers seized twenty, one kilogram and one, half kilogram bricks containing a white powdery substance wrapped in cellophane from the false compartment. The white powdery substance tested positive for cocaine utilizing a field test kit. Troopers seized two iPhones, **Subject Phone 1** and **Subject Phone 2**, from the vehicle claimed by MATA. Troopers transported both prisoners to the Clark County Sheriff's Department for processing and further investigation. After securing the prisoners in the detention facility, the troopers searched the prisoner transport area of their vehicles. Cpl. Ponder located a black HTC cell phone, **Subject Phone 3**, that had been kicked under the driver's seat through a small opening in the floor by ARCE-Macedo. Cpl. Ponder contacted Drug Enforcement Administration (DEA) SA Jonathan Vannatta to assist with the investigation.

    5.     SA Vannatta and SA Scott Cunningham responded to the Clark County Sheriff's Office to assist the ASP with the investigation. SA Vannatta and SA Cunningham conducted an interview of MATA. Prior to the arrival of SA Vannatta and SA Cunningham, ASP Criminal Investigations Division (CID) SA David Ryder advised MATA of her rights per Miranda and obtained MATA's signature on ASP Form 116, Miranda Rights Form. MATA indicated she understood her rights both verbally and by initialing the form. In addition, MATA stated she

wished to waive her rights and signed the waiver of rights portion of the form agreeing to an interview. SA Vannatta and SA Cunningham reviewed the ASP Miranda Rights Form with MATA and confirmed she still wished to waive her rights and consent to an interview. MATA verbally indicated she continued to waiver her rights and consented to an interview. MATA admitted she smoked marijuana prior to departing Conroe, Texas on the trip with ARCE-Macedo. She indicated the marijuana was very strong and she could detect the odor on her clothing. She did not doubt Cpl. Ponder detected the odor of marijuana when she rolled down her window providing Cpl. Ponder with probable cause to search the Honda Element. MATA stated she purchased **Subject Phone 1 and Subject Phone 2**. Both phones are listed under her T-Mobile cellular account. MATA pays the bill for the account although she allows ARCE-MACEDO to utilize **Subject Phone 2**. MATA signed a consent to search form for **Subject Phone 1** and **Subject Phone 2** as well as a voluntary disclaimer of ownership.

      6.      SA Vannatta and SA Cunningham attempted to interview ARCE-Macedo. ARCE-MACEDO followed SA Vannatta's instructions in English, however when SA Vannatta attempted to advise ARCE-Macedo of his rights ARCE-Macedo indicated he did not speak English. SA Vannatta asked if he wished to cooperate. ARCE-Macedo only shrugged his shoulders and shook his head indicating no. Homeland Security Investigations (HSI) SA Ricky Petrie later arrived to assist with the investigation and determine ARCE-Macedo's immigration status. During this interview, ARCE-Macedo indicated he was not in the United States legally. He indicated he crossed the border in Arizona approximately 15 years ago. ARCE-Macedo would only answer those questions and would not cooperate further. SA Vannatta informed ARCE-Macedo that Cpl. Ponder located the cell phone, **Subject Phone 3**, which ARCE-Macedo

kicked under the seat of Cpl. Ponder's ASP Tahoe when he was transported in to the Clark County Sheriff's Department. ARCE-Macedo smiled and lowered his head.

7. The three electronic devices which are the subjects of this matter are currently in the lawful possession of the Drug Enforcement Agency at its Little Rock, Arkansas District Office. The items were transferred to the undersigned by officers of the Arkansas State Police who seized the devices in Clark County as stated above. While the DEA may already have all necessary authority to examine Subject Phones 1,2, and 3, I seek this additional warrant out of an abundance of caution to be certain that an examination of the devices will comply with the Fourth Amendment and other applicable laws.

8. The devices are currently in storage in the evidence locker at the DEA Little Rock District Office located in Little Rock, Arkansas. In my training and experience, I know that the devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the Arkansas State Police.

Based upon the foregoing facts, your affiant believes that concealed within the above described suspect cellular telephones are numbers associated with the telephones, names, text messages, voice mail messages, contact numbers, photographs, videos, and any deleted information for/of individuals involved in the purchase, transportation, and/or distribution intent to distribute cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

FURTHER YOUR AFFIANT SAYETH NOT:

_____
Jonathan Vannatta
Special Agent
U.S. Drug Enforcement Administration
Little Rock District Office

Sworn before me on this 21st day of January, 2016

_____
Hon. Barry A. Bryant
Chief U.S. Magistrate Judge

# ATTACHMENT A

1. All records on the three devices described in the affidavit that relates to violations of 21 U.S.C. §§ 841(a)(1) and 846, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording the suspects' schedule or travel;

   e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electronic storage and any photographic form.